UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARLAND L. ROBINSON,

      Plaintiff,

v.

COMPASS GROUP USA,

      Defendant.

Case No. 20-13365
Honorable Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

---

**OPINION AND ORDER OVERRULING OBJECTIONS [32],
ADOPTING REPORT AND RECOMMENDATION [31], AND
GRANTING COMPASS' MOTION FOR SUMMARY JUDGMENT [26]**

---

Harland Robinson began working for Compass Group USA in 2012, where he provided janitorial services to a hospital. In 2017, Robinson was in a car accident and suffered chronic back pain as a result. He requested and received intermittent leave from Compass for his chronic back pain pursuant to the Family and Medical Leave Act. Robinson's FMLA-authorized leave continued until December 12, 2019, when Compass denied his leave for failure to submit supporting medical records. Compass allowed Robinson to appeal this decision, however, by submitting the requested documents within a certain time, which Robinson did. Apparently, further leave was never approved.

During his time at Compass, Robinson received a number of disciplinary warnings, which Compass calls "progressive counselings." In October 2018, he received a counseling for not properly cleaning an assigned area. A year later, in October 2019, he received a counseling for not being in his assigned area and being

in an office with the door locked. In November 2019, Robinson was found charging his phone in the lobby instead of working, for which he received another counseling. Robinson disagrees that his actions warranted these counselings.

The final straw, however, was in December 2019, when Robinson's director, Brian Adams, received a report from Rondell Coates, Robinson's direct supervisor. Coates said he heard from other employees that Robinson had been discussing Coates' sexual history. Adams investigated Coates' report and obtained statements from two hospital employees and one Compass employee corroborating the report. Adams also asked Robinson whether he made the statements, which Robinson denied. But Adams ultimately found that Robinson had violated Compass' Fair Treatment Policy and terminated Robinson.

Robinson believes that his termination and counselings were a result of discrimination based on his disability and his exercise of his FMLA rights. So after receiving an EEOC right-to-sue letter, he filed a pro se complaint against Compass for violating the Americans with Disabilities Act, the FMLA, and Michigan defamation law.

All pretrial matters were referred to Magistrate Judge Kimberly G. Altman. In time, Compass filed a motion for summary judgment, and Magistrate Judge Altman recommended that the motion be granted and the case be dismissed. Robinson filed objections to this recommendation.

The Court OVERRULES Robinson's objections for the reasons explained below. The Court will ADOPT the Magistrate Judge's Report and Recommendation and GRANT Compass' motion for summary judgment.

## I. Legal Standard

When a party objects to a magistrate judge's Report and Recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985). But "[t]he district court need not provide de novo review where the objections are frivolous, conclusory or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Accordingly, objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Further, Robinson is not entitled to a lower standard at summary judgment because he is proceeding without an attorney. *See Taylor v. JPMorgan Chase Bank, N.A.*, No. 19-5044, 2019 WL 7596923, at *2 (6th Cir. 2019) ("[N]on-prisoner pro se litigants have no right to special treatment or assistance in responding to dispositive motions." (citing *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 558 (6th Cir. 2003))). "Liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).

## II. Analysis of Objections

Robinson brought several claims against Compass: discrimination, failure-to-promote, retaliation, and hostile work environment under the ADA; interference and retaliation under the FMLA; and defamation. After addressing a threshold issue, the Court will address each claim in light of Robinson's objections.

### A. Timeliness of Objections

Compass argues that Robinson's objections should not be considered as they were submitted 15 days after the Report was issued, so they are untimely. In making this argument, Compass ignores Federal Rule of Civil Procedure 6(d), which requires that three days be added to the time in which a party being served by mail must act. The docket shows that the Report was mailed to Robinson, so he is entitled to 17 days to object, instead of the typical 14 days. So the Court will consider Robinson's objections.

### B. Disability Discrimination

For Robinson to establish a prima facie case of disability discrimination, he must show, among other things, that "the employer knew or had reason to know of the plaintiff's disability" and that "the position remained open while the employer sought other applicants or the disabled individual was replaced." *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016). A plaintiff can also satisfy this last element by showing that non-disabled employees "were treated more favorably than he was." *Waggoner v. Carlex Glass America, LLC*, 682 F. App'x 412, 415 (6th Cir. 2017).

4

Robinson objects to the Magistrate Judge's finding that Robinson failed to show that Adams, who made the decision to terminate Robinson, knew or had reason to know of Robinson's disability. Adams unequivocally stated in his declaration that he was not aware of Robinson's disabilities or his previous FMLA-authorized absences when he decided to terminate Robinson's employment. (ECF No. 27-1, PageID.228.) Robinson objects, stating that Compass and another supervisor knew that he was on FMLA leave, so even if Adams did not know, Adams should not have terminated him. (ECF No. 32, PageID.728.) Robinson also argues that "a director [should know] who is on FMLA or not[.]" (*Id.*)

Robinson offers no legal support for his contention that a corporation's knowledge of an employee's absences and disability can be imputed to a specific decisionmaker. To the contrary, the Sixth Circuit has held that, in deciding whether a termination was the result of discrimination, the person who decided to terminate the plaintiff must know of the protected characteristic. *Messenheimer v. Coastal Pet Prods., Inc.*, 764 F. App'x 517, 519 (6th Cir. 2019) (citing *Tennial*, 840 F.3d at 306). Robinson has not provided any evidence that Adams had reason to know of his disability. Without such evidence, no reasonable jury could find that Adams knew about Robinson's disability or prior FMLA absences. So Robinson's objection that Adams must have known about his disability because the company knew about his disability is overruled.

Robinson makes a second, related objection: that Adams knew of his disability because "the format outline of the answers to motion for summary judgment informed

that Robinson is disabled in the outline for james river insurance company settlement[.]" (ECF No. 32, PageID.731.) The Court is unable to identify what exhibit Robinson is referencing. Nothing attached to his response to the motion for summary judgment, nor anything submitted by Compass, is from James River Insurance Company. Further, it is unclear whether this objection is meant to show that Adams had reason to know that Robinson is disabled, as Robinson does not explain if or when this document was sent to Adams such that it would affect Adams' decision to terminate Robinson. So the Court overrules this objection as well.

And even if a reasonable jury could find that Adams should have known of Robinson's disability, his prima facie case still fails. Robinson has not objected to the Magistrate Judge's findings that he has not provided any evidence as to what happened to his position after he was terminated or any evidence that a similarly situated employee who was not disabled was treated better than him. So he has not satisfied the last element of a prima facie case of disability discrimination.

Beyond his prima facie case, Robinson also cannot prevail on pretext. "Without direct evidence of disability discrimination, claims brought under the ADA . . . are evaluated under the *McDonnell-Douglas* burden-shifting approach." *Hurtt v. Int'l Servs.*, 627 F. App'x 414, 419 (6th Cir. 2015). That means that after Compass has articulated a "legitimate, nondiscriminatory reason" for Robinson's termination, Robinson must show that this reason was pretext for unlawful discrimination. *See id.*

Compass has provided evidence of multiple instances where Robinson was warned about his performance. In 2015, Robinson was written up three times for

performance-related issues and for using hospital computers. (ECF No. 27-5, PageID.540,542, 544.) And in 2016, he was written up for attempting to enter a restricted area. (*Id.* at PageID.546.)

According to Compass, Robinson's termination was a culmination of similar issues. On October 18, 2018, a nurse informed Compass that the patient changing rooms and bathrooms in the MRI area, which was assigned to Robinson, were not properly cleaned, so Robinson received his "First Progressive Counseling." (ECF No. 27-1, PageID.242.) On October 29, 2019, Robinson was found in an office with the door locked and all the lights off while he was supposed to be working. (ECF No. 27-5, PageID.551.) His supervisors suspected Robinson of attempting to use hospital computers, which was prohibited. (*Id.*) And on November 1, 2019, a hospital employee told one of Robinson's supervisors that he was not picking up the trash in his assigned area and handed her a bag of trash. (*Id.*) So Robinson received his "Second Progressive Counseling" for these two incidents. (*Id.*) On November 29, 2019, Robinson was not in his assigned work area and instead, one of his supervisors found him in the lobby sitting between two patients and charging his phone. (ECF No. 27-5, PageID.554.) Robinson received his "Final Progressive Counseling" for that incident. (*Id.*)

The final straw occurred in December 2019. Adams learned that Compass and hospital employees had reported that Robinson was discussing Coates' "sexual activities and sexual preferences at work, spreading rumors that [Coates] was in sexual relationships with various [h]ospital employees, and used slurs to refer to

7

[Coates]." (ECF No. 27-1, PageID.226.) Adams learned this from Rondell Coates himself, one of Robinson's supervisors. (*Id.*) Adams decided to investigate and obtained statements from two hospital employees and a Compass employee that corroborated the reports. (ECF No. 27-1, PageID.247, 249, 251.)

According to Adams, in January 2020 he asked Robinson if he made those statements, and Robinson denied doing so. (*Id.* at PageID.228.) But since three witnesses, including two hospital (so non-Compass) employees gave statements to the contrary, Adams decided to terminate Robinson for violating Compass' Fair Treatment Policy. (*Id.*)

Thus, Compass has evidence of a legitimate, nondiscriminatory reason for firing Robinson, which shifts the burden to Robinson to show pretext. Robinson either provides explanations for his Progressive Counseling incidents, denies that they occurred, or states that Compass has not provided "proof" of these incidents. (ECF No. 32, PageID.721.) Essentially, Robinson contends that since he protested the Progressive Counseling incidents when they were issued, and continues to disagree with them, his word is as good as Compass' when it comes to whether the disciplinary issues actually occurred.

Robinson misunderstands his burden, however. When, as here, an employer invokes the honest-belief rule, it cannot be held liable "if it demonstrates that it had an honest belief in its justifications based upon reasonable reliance on the particularized facts that were before it at the time the decision was made." *Parks v. UPS Supply Chains Sols., Inc.*, 607 F. App'x 508, 514–15 (6th Cir. 2015) (quoting

8

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). The honest-belief rule applies even if the facts relied upon turn out to be incorrect. *See, e.g.*, *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285–86 (6th Cir. 2012). So Robinson cannot avoid summary judgment with "hypothetical theories, conjecture, or an unsupported denial of wrongdoing." *Parks*, 607 F. App'x at 514–15 (6th Cir. 2015). Instead, he "must put forth the evidence which demonstrates that [Compass] did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Id.; see also Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009).

A reasonable jury could not conclude that Compass or Adams did not honestly believe that Robinson acted in a way that merited progressive counseling or termination. The final progressive counseling incident is instructive, and also dispositive, as that incident alone could justify terminating Robinson. (ECF No. 27-4, PageID.392 ("[I]f the Company finds that this Policy was violated, corrective action up to and including termination may result based on the severity of the offense.").) Adams testified that Coates complained to him that Robinson was discussing Coates' "sexual activities and sexual preferences at work," spreading "rumors that [Coates] was in sexual relationships with various Hospital employees" and using "slurs to refer" to Coates. (ECF No. 27-1, PageID.226.) Adams, with Compass' Human Resources Department, started an investigation and obtained three written statements from hospital and Compass employees about Robinson's comments. (*Id.* at PageID.227.) All three statements provide details as to what each employee heard

9

Robinson say about Coates. (*Id.* at 227, 247, 249, 251.) And Adams testified that though Robinson denied making the comments, based on the three other employees' statements, he concluded that Robinson had made the comments and violated the Fair Treatment Policy. Thus, Compass relied on particularized facts uncovered through an investigation in deciding to terminate Robinson. Robinson points to no evidence that shows that Compass did not honestly believe that Robinson violated the Fair Treatment Policy, or any facts that would give rise to the inference that he was fired for discriminatory reasons.

Robinson resists this conclusion by pointing out that there is no evidence that he signed the Fair Treatment Policy in 2019. Robinson is correct that the only Fair Treatment Policy signed by him is from 2018. Indeed, the Magistrate Judge acknowledged as much in the Report. But in June 2019, seven months before Robinson was terminated, he signed an acknowledgement that he has received, read, and understood Compass' sexual harassment policy. (ECF No. 27-4, PageID.506.) That policy states that sexual harassment "includes various forms of offensive behavior based on sex," which could involve making "derogatory comments, epithets, slurs, [and] sexually explicit jokes[.]" (*Id.* at PageID.503.) And the policy states that any "Associate who is found to have engaged in any form of sexual harassment . . . will be subject to immediate disciplinary action up to and including termination." (*Id.* at PageID.505.) Plus, Compass sent an email to "All Associates" on the Fair Treatment Policy, which specifically states that "sexual slurs" and "[q]uestions about another's sexual preference or practices" are prohibited. (ECF No. 27-1, PageID.232.)

Robinson does not argue that he did not receive this email. So Robinson was on notice of Compass' policy on making comments about others sexual preferences and activities.

It is also unclear how Robinson not signing the 2019 Fair Treatment Policy shows that he was fired because of his disability, and not because he violated the policy. Robinson does not argue that he did not understand the policy's prohibition on making statements about another employee's sexuality or sexual history, nor does he argue that the policy changed from 2018 (when he signed it) to 2019 or was implemented in a way that did not give him fair notice that he was violating it. So the Court overrules this objection as it does not show that the Magistrate Judge erred in concluding that Robinson did not establish pretext.

In sum, Robinson's objections related to whether he established a prima facie case of disability discrimination or pretext are overruled. Compass is granted summary judgment on Robinson's disability-discrimination claim.

### C. Failure to Promote

The Magistrate Judge found that Robinson's failure-to-promote claim failed because Robinson identified a job he applied for at the hospital, and not through Compass. Robinson seemingly agrees, as he writes in his objections that it was Ascension Health, not Compass, who did not hire him. (ECF No. 32, PageID.724.) So the Court grants summary-judgment to Compass on the failure-to-promote claim as Compass was not responsible for hiring for the position Robinson applied for.

11

**D. ADA Retaliation**

To establish a prima facie case of retaliation under the ADA, Robinson must show that he "engaged in a protected activity," was subject to an adverse action, and that "there was a causal connection between the protected activity and the adverse action." *Robinson v. MGM Grand Detroit, LLC*, 821 F. App'x 522, 531 (6th Cir. 2020). Robinson objects to the Magistrate Judge's conclusion that Robinson had not shown he engaged in a protected activity or that there was a causal connection between the protected activity and the adverse action (his termination).

Robinson states that his protected activities are "his FMLA and his protected characteristics." (ECF No. 32, PageID.726.) "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Robinson*, 821 F. App'x at 531. So Robinson's protected characteristics themselves cannot be a protected activity for retaliation purposes. Also, requesting and receiving FMLA leave is a protected activity that is covered by Robinson's FMLA-retaliation claim, which the Court addresses later.

Robinson also argues that the Magistrate Judge erred in finding that a complaint he made to Compass' "Speak Up" hotline in February 2019 was not protected activity under the ADA because it was not about his disability. He states that he was on approved FMLA leave when the "harassment occurred" and at the time he reported the harassment to Compass. (ECF No. 32, PageID.726.)

A review of Robinson's complaint and subsequent investigation shows that Robinson was not clearly complaining about disability discrimination. The complaint

12

does state that Robinson "views the situation as harassment and an unknown form of discrimination." (ECF No. 29, PageID.597.) As the Sixth Circuit has found, "[v]ague charge[s] of discrimination are generally insufficient" to constitute a protected activity. *Robinson*, 821 F. App'x at 532. And the substance of the complaint is about being "constantly micromanaged" and "monitored," and that he has been falsely accused of committing violations, which does not necessarily implicate discrimination based on disability. (*See* ECF No. 32, PageID.726.) Further, Compass' Human Resource Department followed-up on Robinson's complaint with Adams and requested more information about his progressive counseling. (ECF No. 27-2, PageID.280.) Nothing in the communications between HR and Adams mentioned Robinson's disability either. (*Id.* at PageID.279–280, 285.)

The Court need not decide whether Robinson's complaint was a protected activity, however, because the Magistrate Judge also recommended dismissing the ADA-retaliation for lack of a causal connection. The Magistrate Judge concluded that because 11 months had passed between the complaint and Robinson's termination, temporal proximity could not support an inference of causation. Robinson does not point to any evidence or provide any further argument as to the causal connection between his complaint and termination. So, the Court overrules Robinson's objections to the ADA-retaliation claim because they are not dispositive as they fail to address causation.

### E. FMLA Interference and Retaliation

The Report evaluated Robinson's FMLA-based claims under both interference and retaliation theories. Though it is not clear that Robinson pled FMLA-interference, this Court will follow suit and construe Robinson's FMLA-related objections as asserting both theories.

Start with interference. "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer. Interference occurs when an employer shortchanges an employee's leave time, denies reinstatement, or otherwise interferes with an employee's substantive FMLA rights." *Marshall v. The Rawlings Company LLC*, 854 F.3d 368, 384–85 (6th Cir. 2017).

Robinson argues that he was terminated while he was on intermittent FMLA leave. The record shows that this is a misstatement. Based on Robinson's own documentation, Compass notified Robinson that his "FMLA leave is DENIED EFFECTIVE 12/12/2019 for failure to submit the Medical Certification or provide any supporting medical records as directed." (ECF No. 29, PageID.649.) But that same notice allows Robinson to appeal by submitting the Medical Certification by December 23, 2019. (*Id.*) And Robinson appears to have submitted a Medical Certification form on December 20, 2019. (ECF No. 29, PageID.645.) There is nothing in the record showing that further leave was approved based on this form, however. So it seems like Robinson was in the process for applying for more FMLA leave, and before he received approval, he was terminated. The Court notes, though, that the

14

last FMLA approval notice in the summary-judgment record states that Robinson was granted leave "as medically necessary[.]" (ECF No. 29, PageID.654.) So it appears Robinson was still working but allowed to take leave when he needed to address his medical issues.

Even if his FMLA leave was being processed when he was terminated, Robinson is still unable to pursue an FMLA-interference claim. "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Mullendore v. City of Belding*, 872 F.3d 322, 327–28 (6th Cir. 2017) (quoting *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). Here, the only challenged conduct Robinson identifies is his termination.

As explained earlier when discussing pretext, Compass has detailed Robinson's disciplinary history and the steps it took in deciding to terminate Robinson for violating the Fair Treatment Policy. Robinson has not provided any evidence for this Court to doubt Compass' decision-making process. And Adams testified that he was not aware of Robinson's prior FMLA absences or that he was applying for FMLA leave when he terminated him. (ECF No. 27-1, PageID.228.) Robinson does not provide any evidence that shows otherwise.

Thus, the Court concludes that Robinson's FMLA interference claim must be dismissed because he would have been terminated regardless of his exercise of his FMLA rights. *See Mullendore*, 872 F.3d at 327–28.

Regarding FMLA retaliation, some of Robinson's objections are nearly identical to objections the Court has already addressed. So those objections are overruled for the same reasons.

To the extent Robinson makes different objections in support of his FMLA-retaliation claim, Adams' lack of knowledge is again dispositive. The Magistrate Judge found that Robinson provided no evidence that Adams knew of his prior FMLA absences and FMLA requests. *See Slusher v. United States Postal Serv.*, 731 F. App'x 478, 480 (6th Cir. 2018) (finding that to make a prima facie case of FMLA retaliation, plaintiff must show that the decisionmakers "had knowledge of his FMLA status"). As noted earlier, Robinson does not point the Court to any evidence to the contrary.

And though Robinson may pursue a "cat's paw" theory of liability,[1] he has not put forth any evidence that anyone other than Adams made the ultimate decision to terminate him. *See Marshall*, 854 F.3d at 380 ("A supervisor who conducts an in-depth and truly independent investigation is not being manipulated by biased lower-level supervisors, but rather making a decision based on an independent evaluation of the situation."). Adams testified that, after hearing from Coates, he conducted his own investigation into whether Robinson violated the Fair Treatment Policy, which shows that he independently reached the conclusion to terminate Robinson. (*See* ECF

---

[1] "[T]he cat's paw theory addresses situations in which decisionmakers unthinkingly adopt the recommendations of their biased lower-level supervisors" and it "forecloses a strategic option for employers who might seek to evade liability through willful blindness as to the source of reports and recommendations." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 378 (6th Cir. 2017) (internal citations omitted).

16

No. 27-1, PageID.227.) And though Robinson claims that Coates discriminated against him, he is not sure if Coates even knew about his disability or his FMLA absences. (ECF No. 27-3, PageID.354, 359.) Most importantly, Adams reached his termination decision by relying on statements from employees other than Coates, including non-Compass employees. (*See* ECF No. 27-1, PageID.227.) So Robinson's testimony that Coates (but not Adams) discriminated against him does not save his FMLA retaliation claim under a cat's paw theory. (*See* ECF No. 27-3, PageID.355.)

Finally, even if Robinson had made a prima facie case of FMLA-retaliation, he would need to show pretext. *See Marshall*, 854 F.3d at 379. And for the reasons given previously when considering Robinson's disability-discrimination claim, a reasonable jury could not find that his termination was pretext for FMLA retaliation.

In sum, neither Robinson's FMLA claim based on interference nor retaliation survive Compass' motion for summary judgment.

### F. Hostile Work Environment

Robinson next objects to the Magistrate Judge's finding that he did not show a hostile work environment due to harassment about his disability. He states that because he reported harassment to the company, he must have been harassed because he "would not call . . . the hotline for no reason." (ECF No. 32, PageID.729 (cleaned up).) Robinson misunderstands the Magistrate Judge's conclusion. It was not that Robinson had "no reason" to call the hotline. Rather, the hotline report fails to say anything about being harassed based on Robinson's disability. As the Court found previously, Robinson's hotline complaint is vague and merely states that he

views his supervisors' micromanagement and "false" accusations of performance violations as "harassment" and an "unknown form of discrimination." (ECF No. 29, PageID.597.) So the Court is unable to conclude that this alleged "harassment" was based on Robinson's disability. Nothing about the harassment is specific to or implicates his disability. And Robinson has not provided evidence that similarly situated, non-disabled employees were treated better. So the Court cannot infer that this harassment was on the basis of Robinson's disability.

Moreover, Robinson's complaints of micromanaging and monitoring his activities at work does not rise to the level of severe and pervasive conduct. *See Waltherr-Willard v. Mariemont City Schs.*, 601 F. App'x 385, 388 (6th Cir. 2015) (defining a hostile work environment as one "permeated with discriminatory intimidation, ridicule, and insult"). Robinson's barebones description of the micromanaging and monitoring also do not show that this micromanaging involved physical intimidation. (ECF No. 27-3, PageID.368 (describing the harassment as his supervisor "kept watching" Robinson and that his supervisor "consistently walked up on [me]").) Robinson also testified that this alleged harassment did not interfere with his work. (ECF No. 27-3, PageID.373 ("I wouldn't say [the harassment] affected my work. I would more like say it made me – I wasn't comfortable.").) So, at best, Robinson has shown that he was subject to scrutiny by his supervisors, but nothing that would lead a reasonable jury to find that his work environment was "permeated with discriminatory intimidation . . . and insult." *See Waltherr-Willard*, 601 F. App'x at 388. Therefore, the Court dismisses Robinson's hostile-work-environment claim.

18

### G. Defamation

A reasonable jury also could not find that Robinson was defamed.

Robinson claims two different sets of statements defamed him: first, that Sherman Bradley, another Compass employee, defamed him by giving him a bad reference so Robinson was unable to pursue a job with the hospital, and second, that the individuals who accused him of various disciplinary infractions defamed him because they lied about his performance issues and about whether he made the statements about Coates.

Robinson objects to the Magistrate Judge's dismissal of his defamation claim based on Bradley's reference. Yet Robinson still does not identify what the "bad reference" was that Bradley gave to the hospital. Robinson does not provide the specific statement Bradley made, so it is impossible for the Court to evaluate whether the statement was false and defamatory. *See Reighard v. ESPN*, — N.W.2d —, 2022 WL 1513112, at *4 (Mich. Ct. App. May 12, 2022) (evaluating whether a statement is capable of defamatory meaning and is false). Robinson states that the only way he can show the Court what Bradley said to "discourage" the hospital from hiring him is by calling the nurse manager who was in charge of hiring for the position. (ECF No. 32, PageID.724.) But Robinson was supposed to do this as part of discovery. By failing to do so, and thus not providing any evidence of the defamatory statement, his defamation claim based on Bradley's referral is dismissed.

As for the statements in the progressive counseling documents, Robinson concedes that he must show that these statements were made with actual malice to

19

pursue a defamation claim. *See Whitting v. Allstate Ins. Co.*, 433 F. App'x 395, 398 (6th Cir. 2011) (finding Michigan law grants a qualified privilege to employees making statements about other employees "whose duties interest them in the subject matter"). Robinson argues that he has shown actual malice because he says that the disciplinary actions falsely accuse Robinson "with no evidence or photographs," and that other parties signed false documents used to terminate him. He states that he does not "need any more proof[.] The actual false disciplinary actions and false reports from other employees" show malice. (ECF No. 32, PageID.730.)

It is not enough for Robinson to state, or even testify, that he believes that the statements in the disciplinary actions are false. He must show that the Compass employees made the statements "with a high degree of awareness" that the statements were probably false, or that the employees "entertained serious doubts as to the truth" of the statements. *See Smith v. Anonymous Joint Enterp.*, 793 N.W.2d 533, 541–42 (Mich. 2010). Robinson has not done that. Though Robinson attempts to shift the burden to Compass, claiming that it had no photographs or evidence in support of the disciplinary actions, it is Robinson's burden at this stage to show that the statements were lies such that malice can be assumed. He has not met this burden, so the Court therefore cannot find that the disciplinary actions were fabrications.

Apart from showing that the statements were fabrications, Robinson could show that the Compass employees who made the statements in the progressive counseling documents were aware the statements were false. *Reighard*, 2022 WL

1513112, at *9 ("Actual malice is defined as knowledge that the published statement was false or as reckless disregard as to whether the statement was false or not." (quoting *Ireland v. Edwards*, 584 N.W.2d 632, 640 (Mich. Ct. App. 1998))).

At most, Robinson has shown "only that [Robinson] believe[s] defendants' statements were false." *See Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 533 (6th Cir. 2014). Nothing suggests that the Compass employees who made the statements believed or knew they were false when they made them. Simply put, Robinson has not provided any evidence that Compass employees understood they were making false statements. His assertions are not enough for the Court to conclude that a reasonable jury could find that Compass employees defamed Robinson in his progressive counseling documents.

So Robinson's objections as to the defamation claim are overruled and the claim is dismissed.

## III. Conclusion

In sum, the Court OVERRULES Robinson's objections to the Report and Recommendation (ECF No. 32), ADOPTS the Report and Recommendation (ECF No. 31), and GRANTS Compass' motion for summary judgment (ECF No. 26).

A separate judgment will follow.

SO ORDERED.

Dated: August 15, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

21